Alexander B. KLEIN, III,
Plaintiff–Appellant

v.

MARVIN LUMBER AND CEDAR COMPANY, doing business as Marvin Windows and Doors, Defendant–Appellee.

No. 13–20754
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 15, 2014.

Joseph Todd Trombley, Trombley Law Firm, Houston, TX, for Plaintiff–Appellant.

Thomas Henry Boyd, Esq., Justin Heath Jenkins, Michael E. Obermueller, Winthrop & Weinstine, P.A., Minneapolis, MN, for Defendant–Appellee.

Before HIGGINBOTHAM, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM: *

In 2002, Alexander B. Klein, III ("Klein") purchased a house that had been built for the sellers in 1998. The house included windows manufactured by Marvin Lumber and Cedar Company ("Marvin") and sold to a distributor, who then sold the windows to a home builder. The windows eventually began leaking water, resulting in water damage to the windows and to the substructure of the house. Klein sued Marvin under the Texas Deceptive Trade Practices Act ("DTPA") for false representations and breach of express or implied warranty. Klein also alleged negligence in the design, manufacture, and installation of the windows. The district court granted summary judgment in favor of Marvin on all claims, and Klein now appeals.

■ "[A] defendant's deceptive trade act or practice is not actionable under the DTPA unless it was committed *in connection with* the plaintiff's transaction in goods or services." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 650 (Tex.1996); *see also PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 88 n. 37 (Tex.2004) (clarifying that this limitation applies to DPTA breach-of-warranty claims as well). The district court granted summary judgment on Klein's DTPA claims because he produced no competent evidence showing that Marvin committed any deceptive act in connection with the relevant transaction here—Klein's purchase of his house in 2002. Klein erroneously contends that the dispositive issue is "whether the defective custom windows in this case were, or were not, a component part." The case upon which Klein relies heavily, *Church & Dwight Co. v. Huey*, 961 S.W.2d 560 (Tex.App.1997), makes clear: "*Amstadt*'s reasoning is not limited to cases where the manufacturer has produced a component part of a completed product, but ... stands for the broader principle that the manufacturer in any case must be connected to the consumer transaction in order to be held liable for deceptive trade practices." *Id.* at 565. Although a manufacturer may be "connected to" a later purchaser's consumer transac-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

tion if the manufacturer's deceptive claims are incorporated into the seller's representations and relied upon by the buyer, *see id.* at 565–66, Klein identifies no allegedly deceptive representations by Marvin that he relied upon in deciding to buy his house.

■ The district court granted summary judgment on Klein's negligent design and manufacture claims based on the economic loss doctrine. "[T]he economic loss doctrine has been applied to preclude tort claims brought to recover economic losses against the manufacturer or seller of a defective product where the defect damages only the product and does not cause 'personal injury' or damage to 'other property.'" *Pugh v. Gen. Terrazzo Supplies, Inc.,* 243 S.W.3d 84, 91 (Tex.App.2007). "[T]he economic loss doctrine has been further applied to preclude tort claims for economic losses made directly against a manufacturer or supplier of a defective component part that causes damage to the 'finished product' into which the component is incorporated." *Id.* at 92. Klein argues that there is a "material fact issue" as to whether the windows were component parts of a finished product, stating in an affidavit that the windows are "freestanding, completed products that were custom built for the home." The photographs submitted into evidence plainly show that the windows are not "freestanding" in any sense of the word, and are quite permanently attached to the house in a manner typical of windows.

■ The district court recognized that the economic loss doctrine would not bar the negligent installation claim, but concluded that Klein had identified no evidence showing that Marvin had in fact installed the windows. Klein argues that there is circumstantial evidence that Marvin installed the windows: (1) a Marvin sales representative responded to his call for assistance with a stuck window, helped him fix the window, told him the windows were subject to a warranty, and told him to call if he had any further problems; and (2) the same representative responded to a later call complaining of leaky windows and told Klein that the windows were made of pine, that the pine was rotting, that pine is not a suitable material for the Houston climate, and that a different material should have been used. Why, Klein asks, would Marvin send a sales representative to respond to his call for assistance, and why would the representative make these statements, if Marvin had not installed the windows? We fail to understand Klein's reasoning. First, it is simply not typical for a window manufacturer to come to a home construction site and install its own products. Second, it is perfectly understandable that a window manufacturer would investigate and respond to a complaint concerning its product, if only to protect its business reputation and to determine whether the product has some previously unknown defect.

■ Klein argues that the district court erred in denying his motion to defer consideration of Marvin's summary judgment motion and allow additional time for discovery. "To obtain a continuance of a motion for summary judgment, a party must specifically explain both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence." *Access Telecom, Inc. v. MCI Telecomms. Corp.,* 197 F.3d 694, 719 (5th Cir.1999) (quotation omitted). In his motion before the district court, Klein did not even attempt to explain how additional discovery would enable him to discover facts that could defeat summary judgment. The district court therefore did not abuse its discretion in denying the motion.

■ Klein also faults the district court for striking his First Amended Complaint.

On Marvin's motion, the district court struck the complaint under Federal Rule of Civil Procedure 15(a) because Klein filed it, without leave of the court or Marvin's consent, more than 21 days after filing his original pleading.[1] Klein argues that leave of the court was not required because the time specified in the scheduling order to amend pleadings had not expired, noting that "Rule 16(b)(3)(A) says nothing about leave being required to amend one's pleadings within the deadline set by the trial court." This is correct, but neither Rule 16 nor the scheduling order overrides the clear statement in Rule 15 that amendments after the 21–day period require leave of the court or consent of the opposing party. In any event, Klein was in no way prejudiced by the striking of the amended complaint, which contained exactly the same causes of action as his previous complaint. Furthermore, the additional facts alleged in the amended complaint are unhelpful in the context of summary judgment. *See Save Our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc.*, 568 F.2d 1074, 1077 (5th Cir.1978) ("Motions for summary judgment are designed to pierce the allegations in the pleadings, thereby permitting the court to determine whether a factual basis actually exists for the petitioner's claims.") (quotation omitted). Finally, even accepted as true, the additional alleged facts, which are repeated nearly verbatim in Klein's affidavit admitted into evidence, do not defeat Marvin's motion for summary judgment.

AFFIRMED.

---

1. Under Rule 15(a)(1)(B), the 21–day period for amendment as a matter of course runs from the date Marvin's answer was served, not the date Klein's initial complaint was filed. However, Klein's amended complaint, which was filed nearly five months after Marvin's answer was served, was clearly untimely under the correct standard.